# United States Bankruptcy Court

## Eastern District Of Washington

In Re: )
)
JOHN D. BROERS )    Main Case Number:      07-00094-FLK13
)
)
)
)    **DECISION**
           Debtor(s). )

---

John D. Broers is a chapter 13 debtor and, for the purposes of the meanstest, an above median income debtor in a single person household. In calculating his chapter 13 plan payment, Mr. Broers deducted transportation allowances for each of his two vehicles. The chapter 13 trustee (trustee) objects to the confirmation of Mr. Broers' plan, contending the transportation allowance for the second vehicle is neither reasonably necessary nor permissible under the 11 U.S.C. § 707 (b)(2) meanstest formula. The court concludes above median income debtors like Mr. Broers must calculate expenses in accordance with § 707 (b)(2). As a consequence, courts generally lack authority under § 1325 (b)(2) to decided whether a standardized expense established by Congress is reasonably necessary. The court further concludes, however, the meanstest, official form B22C, and the IRS standards all require interpretation and application, a function performed by the courts in the confirmation process. As applied to the facts of this case, the meanstest formula does not mandate a transportation allowance for Mr. Broers' second vehicle. Accordingly the court rules that the transportation allowance for the second vehicle is not reasonably necessary.

STATEMENT OF FACTS

John Broers is a crane operator, who lives in East Wenatchee and works at ALCOA. His gross monthly income is $5,200.00. He lives alone but pays child support for a nine year old daughter, who lives with her mother in Vancouver, Washington. Twice a month Mr. Broers travels to Vancouver to spend time with his daughter. Mr. Broers owns two vehicles, a 2006 KIA Rio,

DECISION
November 20, 2007                  1

which he uses for travel to Vancouver, and a 1997 Ford F150 pickup, which he uses for transportation to ALCOA and general yard work.

In January of this year, Mr. Broers filed a petition for relief under chapter 13 of the bankruptcy code. His chapter 13 plan provides for a term of 60 months and a base amount of $38,320.00, funded by monthly payments of $600.00 for two months and $640.00 for the remaining 58 months. Among its provisions, Mr. Broers' plan includes a regular monthly payment and an arrearage payment on his 2006 KIA Rio automobile. The plan also provides for the distribution of approximately $12,872.55 to general unsecured creditors.

Along with his chapter 13 petition, Mr. Broers filed official form B22C, denominated A Statement of Current Monthly Income and Calculation of Commitment Period And Disposable Income. On that form, Mr. Broers claims transportation allowances (operating and ownership) for the 2006 KIA Rio and the 1997 Ford F150 pickup. He owns the Ford pickup outright and he does not make any loan or lease payment on it. On that form, Mr. Broers states his annualized current monthly income is $59,586.56, which exceeds the applicable median family income for a one person household by $15,000.00.

The trustee objects to confirmation of Mr. Broers' proposed chapter 13 plan. The trustee contends Mr. Broers is not proposing to pay all disposable income into his plan because he is claiming an excessive allowance for transportation. Specifically, the trustee argues Mr. Broers cannot claim a transportation allowance for his second vehicle for three reasons. First, Mr. Broers has not shown that his second vehicle is a reasonably necessary expense. Second, the transportation allowance for a one person household should be limited to one vehicle. Third, even if Mr. Broers could claim a deduction for a second vehicle, he cannot claim an ownership expense for a vehicle on which he is not making a loan or lease payment.

### DISCUSSION

11 U.S.C. § 1325 (a)(3) obligates the court to confirm Mr. Broers' chapter 13 plan if, among other things, the plan is proposed in good faith and not by any means forbidden by law. The statute further provides that if either the trustee or an unsecured creditor objects to the confirmation of the plan, the court may not approve the plan unless "the plan provides that all of the debtor's projected

DECISION
November 20, 2007                                    2

disposable income to be received in the applicable commitment period... will be applied to make

payments to unsecured creditors under the plan." § 1325 (b)(1)(B).

Section 1325 (b)(2) defines disposable income as "current monthly income received by the

debtor... less amounts reasonably necessary to be expended[.]"  The statute further provides that the

"amounts reasonably necessary to be expended under paragraph (2) shall be determined in

accordance with subparagraphs (A) and (B) of § 707 (b)(2)," if the debtor has annualized current

monthly income greater than the median family income of the debtor's state.  § 1325 (b)(3).

Additionally, §707 (b)(2) provides the "debtor's monthly expenses shall be the debtor's applicable

monthly expense amounts specified under the National Standards and Local Standards, and the

debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by

the Internal Revenue Service for the area in which the debtor resides..." § 707 (b)(2)(A)(ii)(I).  In

summary, for above median income debtors like Mr. Broers, "disposable income" is now based on

"current monthly income" minus "applicable monthly expense amounts" and "actual monthly

expenses." § 1325 (b)(2).  And National Standards, Local Standards, and Categories of Other

Necessary Expenses as set by the IRS determined amounts reasonably necessary to be expended.

Like other chapter 13 debtors, Mr. Broers was required to complete official form B22C in

order to show that he was paying all of his projected disposable income into his plan.  At part I of

the form, he reported his income earned or received during the six months before the month the case

was filed so that his "current monthly income" could be calculated.  At part II, his current monthly

income was multiplied by 12 to reach an annualized figure, which was compared to the median

family income for the state of Washington for a one person household.  Because Mr. Broers' income

exceeds the comparable median income, he is required to commit to a five year chapter 13 plan.

There is no dispute between the trustee and the debtor regarding parts I and II of form B22C.

The dispute between the trustee and the debtor involves part III of form B22C, which is used

to determine the statutory methodology by which Mr. Broers' current monthly income will be

adjusted for monthly expenses to calculate disposable income.  Because Mr. Broers is an above

median income debtor, the reasonably necessary expenses involved in the disposable income

calculation will be determined according to the methodology set forth in § 707 (b)(2)(A) and (B).  §

DECISION
November 20, 2007                                    3

1325 (b)(3).  The available deductions are generally comprised of certain national and local standard deductions based on IRS guidelines, certain actual expenses allowed by IRS guidelines, other actual expenses allowed by § 707 (b)(2) and other deductions for secured debt, priority debt, and administrative expenses.

In part III, the deductions for expenses associated with the operation and ownership of vehicles appear in three different places.  First, at line 27, a deduction is available for operating expenses, based on IRS local standards.  There, Mr. Broers used the local standard deduction of $420.00 for a debtor operating "two or more" vehicles.  The trustee objects to this deduction because the trustee asserts a second vehicle deduction for a one person household is neither allowable nor reasonably necessary.

At lines 28 and 29, there are deductions for ownership expenses.  At line 28, Mr. Broers deducted $162.00, which was calculated by subtracting his monthly car payment of $309.00 from $471.00, the local standard ownership deduction for the first vehicle.  The trustee does not object to this deduction.  At line 29, Mr. Broers deducted $332.00, which is the local standard ownership deduction for a second vehicle.  The trustee objects to Mr. Broers' ownership deduction for the second vehicle because it is a second vehicle and because the vehicle has no ownership cost.

The court is confronted with several questions regarding Mr. Broers' transportation expense deductions on form B22C.  First, can Mr. Broers deduct any expense for a second vehicle, if the first vehicle is sufficient for his transportation needs?  Second, under § 707 (b)(2) can a one person household claim a transportation expense deduction for a second vehicle?  Third, can Mr. Broers deduct an ownership expense for a vehicle he owns free and clear and not subject to any ownership expense?

Mr. Broers' case for these deductions is based upon the apparent distinction § 707 (b)(2)(A)(ii)(I) makes between **applicable monthly expense amounts** and **actual monthly expenses**.  The section mandates that the debtor's monthly expenses "shall be," *inter alia*, the "**applicable monthly expense amount** specified under the National Standards and Local Standards, and the debtor's **actual monthly expenses** for the categories specified as Other Necessary Expenses issued by the  Internal Revenue Service for the area in which the debtor resides..." (Emphasis

DECISION
November 20, 2007                                    4

added).  Id.  Mr. Broers argues that he is entitled to these deductions because transportation expense deductions are standardized and apply to the above median income debtor in Washington state, without reference to actual expense.  The actual expense limitation refers to Other Necessary Expenses, which involves a different category of expenses.

The trustee disagrees with Mr. Broers.  According to the trustee, this court should determine whether the expense for the second vehicle is reasonably necessary and if not, the court should deny any deduction for the second vehicle.  The premise underlying this contention is that the court retains the authority to rule whether any expense is reasonably necessary, even after the 2005 amendments to the Bankruptcy Code created objective and mechanistic standards for determining those expenses.  Also, the trustee notes the IRS publishes the Financial Analysis Handbook as a guide to its' agents for the interpretation of the National Standards and Local Standards referenced in § 707 (b)(2).  The trustee asserts Congress must have intended the courts to follow the IRS' interpretation of National Standards and Local Standards.  According to the Financial Analysis Handbook's interpretation of Local Standards, Mr. Broers should not be allowed an ownership cost deduction for a vehicle not subject to any ownership cost or any transportation deduction for a second vehicle.

Earlier this year my colleague Judge Williams ruled a debtor could reduce the debtor's projected disposable income by deducting ownership cost for a vehicle when the debtor was not actually making a loan or lease payment on the vehicle.  In re Armstrong, 370 B.R. 323 (Bankr. E.D. Washington, 2007).  In that case, the trustee argued that Judge Williams should follow the guidance of the IRS Financial Analysis Handbook.  Judge Williams rejected the trustee's invitation to align herself with the IRS Financial Analysis Handbook, reasoning that the handbook was not incorporated into the statute by Congress and prepared by the IRS for collection and not bankruptcy purposes.  Traditionally the three judges of this district have not written conflicting opinions regarding the same issue in order to avoid disparate treatment of debtors and creditors within the district.  For that reason the court will follow Armstrong.  This means the court has answered some of the questions raised by this case.  First, the court will not be directed by the IRS interpretation of Local Standards as stated in the Financial Analysis Handbook.  Second, the court holds Mr. Broers is not required to incur an

DECISION
November 20, 2007                                              5

ownership expense for his vehicle in order to take the local standard ownership deduction.

There is some additional guidance for the resolution of this case in eCast Settlement Corp. v. Pak (In re Pak), BAP no. NC-07-1201-DCak (November 2007), a recent Bankruptcy Appellate Panel case dealing with the income side of the disposable income equation. In Pak, the court analyzed § 1325 (b) to determine whether and how two terms used in the statute- "disposable income" and "projected disposable income"- differ. To confirm a chapter 13 plan that has been challenged by the chapter 13 trustee or a creditor, the court must find the debtor's "projected disposable income" has been committed to the plan. § 1325 (b)(1)(A). Before the 2005 amendments, courts traditionally made this finding based upon current and forward looking financial information regarding the debtor. By contrast, "disposable income" as defined in § 101 (10A) and further defined in § 1325 (b)(2) is backward looking, based upon the debtor's history for the six months preceding the filing of the case. Disposable income is calculated for meanstest purposes and recorded at line 58 of form B22C.

In Pak, the debtor had been unemployed for much of the time before he filed his case. For that reason he argued that his "projected disposable income" should be based upon the "disposable income" figure appearing on his form B22C. Simply stated, projected disposable income is the number at line 58 multiplied over the term of the plan. Creditors and the chapter 13 trustee objected, maintaining that the court independently should look at the debtor's current employment status, calculate disposable income based upon current income and project that number over the term of Mr. Pak's plan. In other words, the court should continue to base its findings upon the debtor's present and future ability to fund the plan in the same manner as the court had performed that function before the 2005 amendments.

Bankruptcy courts that have considered the legal issue before the Pak court generally have sided with the trustee and creditor. In re Briscoe,__B.R.__, 2007 WL 2483863 (Bankr. D. Dist. Col.) and In re Meek, 370 B.R. 294, 299-305 (Bankr. Idaho, 2007). Confirming a chapter 13 case based upon historical and not current financial information has little to recommend it. While a formulaic approach to the confirmation process would be simple for courts to apply, it could be less fair. Undoubtly debtors would engage in prebankruptcy planning to the detriment of creditors. Conversely honest debtors might be denied the opportunity for a fresh start based upon the historical

DECISION
November 20, 2007                                    6

data, even though the debtors could demonstrate a current ability to fund a plan.

While sound bankruptcy policy may have supported the position of the parties opposing confirmation of Mr. Pak's plan, the issue before the appellate court was not policy but statutory construction. Specifically, whether Congress changed the meaning of "projected disposable income" in § 1325 (b) by injecting into the statute the term "disposable income." Ultimately the <u>Pak</u> court decided the answer was unclear and Congress' use of the two terms created ambiguity. After applying standard tools of statutory construction, the court sided with the weight of bankruptcy court authority, ruling "that in interpreting 'projected disposable income' in § 1325(b)(1)(B), 'disposable income,' as defined in § 1325 (b)(2) is the starting point for determining 'projected disposable income' subject to adjustment, based on evidence, to reflect reality going forward." <u>Pak</u>, BAP No. NC-07-1207-DCaK (November 2007).

From <u>Pak</u> we have learned that on the income side of the disposable income equation, the court has retained some measure of discretion in the confirmation process. The meanstest number appearing on form B22C is a starting point, from which the court may make adjustments based upon current and actual income. The next question is whether the same flexibility exists on the expense side of the disposable income equation.

Before the 2005 amendments became effective, bankruptcy courts routinely decided whether chapter 13 debtors expenses were reasonably necessary. Whether bankruptcy courts retain this authority for above median income debtors after the amendments to § 1325 (b)(2) and (3) is the next question to be addressed by the court. The trustee argues that because § 1325 (b) continues to require that expenses be "reasonably necessary," the court retains the authority to make a threshold determination regarding whether any expense is reasonably necessary. In response, Mr. Broers argues that the mandatory language of the statute ("amounts reasonably necessary to be extended under paragraph (2) **shall be determined** in accordance with subparagraphs (A) and (B) of § 707 (b)(2)" emphasis added) evidences Congress' intent to deprive the court of that authority.

Preliminarily, it is important to note that <u>Pak</u>, although providing useful guidance to the court, is not controlling. <u>Pak</u> interprets the language dealing with the calculation of the debtor's income but the statutory language varies when treating the calculation of the debtor's expenses.

DECISION
November 20, 2007                    7

Significantly, the income side of the equation does not contain the mandatory admonition- shall be determined- for the calculation of the above median income debtor's expenses.  Also, there is a another reason, other than different statutory language, why expenses may be treated differently than income in the disposable income calculation.  Arguably, confirming a chapter 13 plan based upon past income as opposed to current income is borderline absurd.  Confirming a chapter 13 plan based upon standardized and fixed expenses, however, may represent rational policy.  Congress reasonably could have decided to deprive the court of discretion and to simplify the confirmation process by standardizing chapter 13 debtor expenses.

Bankruptcy courts that have considered this issue have produced conflicting authority, dividing between courts that strictly adhere to § 707 (b)(2)(A) expenses and courts allowing more flexibility.  The former reason that the Congress' use of the phrase "shall be determined..." make the use of meanstest expenses mandatory.  In re Rezentes, 368 B.R. 55, 59 (Bankr. D. Haw., 2007) and In re Edmondson, 363 B.R. 212, 218-9 (Bankr. D. N.M., 2007).  The latter focus on the words "projected" and "expended" and note that at confirmation the court must determine projected income and projected expenses in order to determine projected disposable income.  Meek, 370 B.R. at 306-309 and In re Edmunds, 350 B.R. 623, 649 (Bankr. D. S.C., 2006).  These courts reason that if the court was bound by historical and standardized calculations, the court could not make the forward looking projections required for confirmation.  Despite this division of opinion, most courts agree that the mandatory language of § 1325 (b)(3) in some way limit above median income debtors to the expenses categorized in § 707 (b)(2)(A) and (B).  In other words, while there may or may not be some flexibility regarding § 707 meanstest expenses, above median income debtors must calculate expenses using the standardized expenses.  Meek 370 B.R. at 305-306.  In Judge Myers' words, "...the court may consider, whether a given expense- *within* those expenses authorized by § 707 (b)(2)(A) and (B)– should be allowed when considered in light of the debtor's post petition circumstances and, importantly, the proposed chapter 13 plan."  Id. at 307-308

At this point, the court turns to the trustee's contention that the court retains threshold authority to determine whether Mr. Broers' expenses are reasonably necessary.  The court does not agree with the trustee's contention.  Above median income debtors must calculate expenses in

DECISION
November 20, 2007                                                8

accordance with § 707 (b)(2).  By adopting categories and fixed amounts, Congress specified the expenses it allowed above median income debtors.  In the court's opinion, Congress intended to diminish the court's authority to make subjective judgments regarding what is a reasonable expense. In so ruling, the court follows <u>Armstrong</u>, where Judge Williams allowed the debtor to deduct ownership cost for a vehicle when the debtor was not actually making a loan or lease payment on the vehicle.  Before the 2005 amendments, it is doubtful that any court would have found that such an expense is reasonably necessary.

If this court lacks threshold authority to decide whether Mr. Broers' monthly expenses are reasonably necessary, what authority or discretion does the court retain?   Although not applicable here, the 2005 amendments provide the debtor may show "special circumstances" as described in § 707 (b)(2)(B) that "justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative[.]"   Additionally, the use of categories and fixed amounts under the National and Local Standards does not answer every question that will come before the court upon confirmation of an above median income debtor's chapter 13 plan.  As demonstrated by the IRS' use of the Financial Analysis Handbook, Local and National Standards require interpretation.  Moreover, the IRS standards are a moving target.  On October 1, 2007, the IRS changed the standards without notice outside the Treasury Department.  On its webpage, the IRS allows: "For bankruptcy purposes, the effective date for the standards will be January 1, 2008, to allow for the orderly administration of the bankruptcy laws."  Hon. Keith M. Lundin, <u>The IRS Sneezes and the Advisory Committee on Bankruptcy Rules Catches Cold</u>, 11 Norton Bankruptcy Law Adviser (November 2007).  In short, the meanstest, form B22C, and the IRS standards all require interpretation and application, which is the authority and discretion remaining with the court.

An example of that discretion is the last question presented by this case.  Can Mr. Broers claim transportation allowances for his second vehicle on form B22C?  Under the circumstances of this case, the answer is no.  Mr. Broers' first vehicle is sufficient for all of his transportation needs. It would be unreasonable to ask his creditors to fund a second vehicle for which there is no demonstrated need.  Under the standardized expenses mandated by Congress, Mr. Broers is entitled to an operation deduction and an ownership cost deduction for his first vehicle.  Under the

DECISION
November 20, 2007                              9

1   standardized expenses mandated by Congress, whether Mr. Broers as a single person household is

2   entitled to a deduction for a second vehicle is not clearly established.  For that reason, the court

3   exercises it's discretion and decides that the transportation allowance for the second vehicle is not

4   reasonably necessary.

5                                              CONCLUSION

6          In conclusion, the court holds Mr. Broers may not deduct a transportation expense for his

7   second vehicle.  The court denies the confirmation of Mr. Broers' chapter 13 plan because the plan

8   does not provide that all of the debtor's projected disposable income will be applied to make

9   payments to unsecured creditors.  Mr. Broers is granted 15 days from the date of the filing of this

10  decision to file an amended plan.  In the event Mr. Broers fails to file an amended plan, the court will

11  enter an order dismissing his case.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26          Frank L. Kurtz
            Bankruptcy Judge
27          11/20/2007 09:45:19 AM

28

DECISION
November 20, 2007                              10